# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETH RULE and JENNIFER RIEDY, *On behalf of themselves and all others similarly situated,* | Case No.: 2:20-cv-00990-MPK |
| Plaintiff, | |
| v. | |
| UNIFUND CCR, LLC, | |
| Defendant. | |

## BRIEF IN SUPPORT OF MOTION FOR
## FINAL APPROVAL OF SETTLEMENT OF CLASS ACTION

Plaintiffs Beth Rule and Jennifer Riedy ("Plaintiffs") and Defendant Unifund CCR, LLC ("Defendant") spent nearly one year litigating the merits of the allegations contained within the pleadings filed in the above referenced. In compliance with the Court's Case Management Order and the Local Rules of the Western District of Pennsylvania, this litigation culminated in an Alternative Dispute Resolution process in the form of a mediation. The parties elected Honorable Kenneth Benson (Ret.) to conduct the mediation on November 30, 2020. This mediation operated as a catalyst for ongoing discussions which arrived at a settlement in principle. Without this, the Court faced years of continued litigations, appeals, and substantial litigation cost. The issues in this action are both complex, concerning the intertwining of laws and regulations at the state and federal level, disputed, and carry with them an uncertain outcome for both parties.

As required by this Court's Case Management Order, a Motion for Preliminary Approval of the Class Settlement was filed in January of 2021. The Settlement includes a payment of $30.00

to Class Member's account where the account is closed at the time payment to Class Members[1] is due or a credit of $100.00 to the balance due on each Class Member's account wherein the account remains open at the time payment is due. The Settlement further includes equitable relief insofar as Defendant has filed motions to seal in each Class Member's collection action and Defendant has directed its counsel to comply with the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts, 204 Pa. Code § 213.81. On January 22, 2021, this Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement and now through this motion Plaintiffs seek to obtain final approval of the settlement.

Following the Court's granting of Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement, First Class Inc., promptly began administrating notice to the individuals on the class action mailing list. This list contained approximately 1,128 records of individuals who fell within the following definition of the Settlement Class:[2]

> All individuals in the State of Pennsylvania against whom Unifund: (a) filed a lawsuit on or after June 8, 2019; (b) attaching Financial Source Documentation, defined in 204 Pa. Code § 213.81, as exhibits to one or more pleadings; (c) without filing an accompanying Confidential Document Form; and (d) certifying, through counsel, compliance with 204 Pa. Code § 213.81.

The reaction of the Settlement Class to the settlement was overwhelmingly positive. Out of the 1,125 class members, only one individual requested exclusion from the class. This

---

[1] Unless defined herein, capitalized terms are defined in the Settlement Agreement.
[2] Three exact duplicates were found and removed from the class mailing list and notices were mailed on February 19, 2021 to 1,125 individuals. 61 notices were returned as undeliverable with no forwarding address or further information provided by the U.S. Postal Service. A true and correct copy of the Declaration of First Class, Inc. Case Manager Baily Hughes is attached hereto, made a part hereof, and marked as Exhibit "A".

individual did not object to the manner or terms of the settlement, the distribution to the class, or the manner in which the underlying cases in question were sealed by Defendant. Rather, the individual only requested exclusion from the class. From a legal perspective, it seems fair to say that no class member has voiced any relevant objection to the settlement on its merits or its fairness.

**ARGUMENT**

Approving the settlement of a class action involves two separate inquiries. The Court first must find that the requirements for class certification under Fed.R.Civ.P. 23(a) and (b) have been satisfied. If the class can be certified, the Court must then determine whether the settlement is fair and adequate to the class under Rule 23(e). *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 319 (3d Cir. 2011) (en banc), cert. denied, 566 U.S. 923 (2012).

**I.     THE SETTLEMENT CLASS SATISFIES RULE 23(A) AND RULE 23(B)**

Rule 23(a) has four threshold requirements for class certification: (1) the class must be so numerous that joinder is impractical; (2) common questions of fact or law exist; (3) the claims of the representative plaintiffs are typical of the claims of the class; and (4) the class will be fairly and adequately represented. If the Rule 23(a) standards are met, the class must also satisfy one of the subsections of Rule 23(b). This is a Rule 23(b)(3) action seeking damages, and the (b)(3) requirements are that (i) common questions predominate over any questions affecting only individual members, and (ii) class treatment is superior to other available methods. *In re National Football League Players Concussion Injury Litigation*, 821 F.3d 410, 426 (3d Cir.), cert. denied, 137 S.Ct. 591 (2017) ("In re NFL"). Defendant acted in the same manner toward all class members, and the action can also be certified under Rule 23(b)(2).

### (1) Rule 23(a)(1) Numerosity

The numerosity requirement of Rule 23(a)(1) is straightforward: Is it practicable to join all class members? Within this circuit, numerosity is satisfied if there are more than 40 class members. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001), *cert. denied*, 536 U.S. 958 (2002). *See also In re Modafinil Antitrust Litigation*, 837 F.3d 238, 249-50 (3d Cir. 2016); *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 595 (3d Cir. 2012). Here, there are 1,125 class members. The numerosity requirement is established.

### (2) Rule 23(a)(2) Commonality

Rule 23(a)(2) requires the existence of questions of law or fact that are common to the class. The Court of Appeals for the Third Circuit recently summarized this requirement as follows:

> 'A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.' *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (internal quotation marks omitted). 'Their claims must depend upon a common contention … that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke.' *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2545 (2011). Meeting this requirement is easy enough: '[W]e have acknowledged commonality to be present even when not all members of the plaintiff class suffered an actual injury, when class members did not have identical claims, and, most dramatically, when some members' claims were arguably not even viable.' *In re Cmty Bank*, 795 F.3d at 397

*In re NFL*, 821 F.3d at 427.

The focus under Rule 23(a)(2) is not on the strength of a class member's claim, but rather on whether the defendant's conduct was common to the class, *In re Community Bank of Northern*

*Virginia*, 795 F.3d 380, 397 (3d Cir. 2015), *cert. denied*, 136 S.Ct.1167 (2016), that is, whether there are class-wide answers. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015).

Defendant's course of conduct giving rise to the allegations arose from near-identical actions taken against each member of the settlement class. The allegations all centralize on an affirmation of compliance with the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania. This affirmation was made in connection with the collection of an alleged debt associated with each class member and in each instance this affirmation refers to compliance with the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania. Given the above, identical questions of law and fact would arise were case were approached in isolation of one another and prosecuted as individual actions.

### (3) **Rule 23(a)(3) Typicality**

Rule 23(a)(3) requires that a class representative's claims be typical of the claims of the class. This ensures that the interests of the class and the representatives align so that the class representatives benefit the entire class when they pursue their own goals. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001). The claims and legal theories of the representative plaintiffs and the class members are precisely the same: Whether the alleged false affirmation of compliance was violative of the Fair Debt Collection Practices Act. More specifically, whether this affirmation constituted a material, false and misleading representation or whether it constituted an action that cannot legally be taken. These questions arise within the class representatives' claims the and thus are typical of those of the class members, satisfying Rule 23(a)(3).

### (4) **Rule 23(a)(4) Adequacy**

Rule 23(a)(4)'s requirement that the class representative fairly and adequately protect the interests of the class examines the qualifications of class counsel and the class representatives and searches for conflicts of interest within the class. *See In re NFL*, 821 F.3d at 428.

A. Class Counsel: The adequacy requirement as to counsel "assures that counsel possesses adequate experience, will vigorously prosecute the action, and will act at arm's length from the defendant." *In re Community Bank of Northern Virginia*, 795 F3d at 389. Class counsel is well versed in litigating consumer protection litigation throughout the Commonwealth; is actively litigating over a dozen consumer protection class-action cases relating to violations of the Fair Debt Collection Practices Act and the Unfair Trade Practices and Consumer Protection Law; dedicates a large portion of their practice to prosecuting individual violations of the Fair Debt Collection Practices Act; and has represented thousands of individuals in debt collection actions in Pennsylvania. Moreover, Class Counsel acted at arm's-length from Defendant.

B. Class Representatives: A class representative is adequate even if the representative has only a minimal degree of knowledge about the litigation. *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007). It is enough if the representative authorizes the filing of the lawsuit and follows the litigation with some participation. See *In re NFL*, 821 F.3d at 430. The class representatives, Beth Rule and Jennifer Riedy, are clearly adequate.

C. Conflicts of Interest: Rule 23(a)(4) also serves to uncover conflicts of interest between the named representatives and the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). No known conflicts of interest exist. The class representatives and the class members assert the same claims, and the class representatives are adequate.

### (5) Ascertainability

The Third Circuit has held that "ascertainability" is an implicit requirement for class certification under Rule 23(b)(3). Ascertainability requires a plaintiff to (a) show that the class is

defined with reference to objective criteria; and (b) there is a reliable and administratively feasible mechanism for determining whether class members are within the class definition. *Byrd v. Aaron's Inc*., 784 F.3d 154, 163 (3d Cir. 2015). Here, not only do objective criteria exist, but the class members have already been identified. All elements, both express and implied, of Rule 23(a) are satisfied.

### (6) Class Certification is Appropriate Under Rule 23(b)(3)

A class action may be certified under Rule 23(b)(3) if (i) questions of law or fact common to class members predominate over any questions affecting only individual members and (ii) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

    A.   <u>Predominance</u>. Predominance considers whether a class action would achieve economies of time, expense and effort and promote uniform decisions among similarly situated persons. *Sullivan v. DB Investments, Inc*., 667 F.3d 273, 297 (3d Cir. 2011) (*en banc*), *cert. denied*, 566 U.S. 923 (2012). The test essentially ensures that issues of law or fact common to the class predominate over those affecting only individual members of the class. *Id*.

The Supreme Court recently made clear the difference between individual and common questions.

> An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facia showing [or] the issue is susceptible to generalized class-wide proof.

*Tyson Foods, Inc. v. Bouaphakeo*, ___ U.S. ___, 136 S.Ct. 1036, 1045 (2016). If proof of the <u>*essential*</u> elements of the class' claims can be established at trial with common as opposed to individual evidence, common issues of law or fact predominate. *In re Community Bank of Northern Virginia*, 795 F.3d at 399. As the Third Circuit explained,

7

> [T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct.

*Sullivan*, 667 F.3d at 298. (Emphasis supplied.) Common issues predominate if the inquiry focuses on what defendant did rather than on what plaintiffs did. *Id*., 667 F.3d at 299.

There is a controlling common question in this action: whether Defendant's course of conduct constituted a false and deceptive action taken in pursuit of collecting an alleged debt. This issue focuses on Defendant's conduct effectuated uniformly against those within the Settlement Class. As such, an assessment of Defendant's conduct and whether it violates provisions of the Fair Debt Collection Practices Act predominates over any individual questions. It bears mention the underlying cases which operated to give rise to Defendant's course of conduct were all cases of a similar nature. Defendant made this affirmation of compliance in reference to the same provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania. And in each instance, an identical set of actions were taken that made the affirmation itself false in nature.

B. <u>Superiority.</u> The issues arising from Defendant's conduct iterated above predominate over any questions affecting only individual class members. This makes the class-wide treatment of the claims more efficient. Proceeding as a class also ensures that smaller claims are included when they could not be asserted individually on an economically justifiable basis. Class treatment is also superior because all claims will be concentrated, promoting efficient and consistent administration of justice. Class certification is appropriate under Fed.R.Civ.P. 23(b)(3).

For the reasons set forth above, each of the criteria in Rule 23(a), Rule 23(b)(3) and Rule 23(b)(2) are satisfied, and the Settlement Class should be certified.

II. **THE SETTLEMENT IS FAIR AND ADEQUATE UNDER RULE 23(e)**

A settlement in a class action is presumed to be fair if (1) the settlement was negotiated at arm's-length; (2) there was adequate discovery for counsel to be aware of the strengths and weaknesses of the case; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *In re NFL*, 821 F.3d at 436-37; *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 535 (3d Cir. 2004). These standards are readily satisfied. The settlement reached by the parties culminated following a vigorous mediation with the Honorable Kenneth Benson (Ret.). Class counsel is experienced in similar litigation and there were no objections across the entirety of the class. This settlement is presumed to be fair, but far more importantly, and above a presumption, this settlement is fair and adequate in fact.

The Court of Appeals in *Halley v. Honeywell International, Inc.*, 861 F.3d 481, 488-89 (3d Cir. 2017), recently repeated this Circuit's standard for evaluating the fairness and adequacy of a settlement under Rule 23(e). District Courts must consider the nine factors that originated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975):

(1) the complexity, expense, and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

### (1) Complexity, expense, and likely duration of the litigation

The first *Girsh* factor examines the likely costs in terms of time and money of continued litigation. *See Halley v. Honeywell Intl., Inc.*, 861 F.3d 481, 488 (3d Cir. 2017). The parties obviously dispute whether the alleged course of conduct constitutes a false and misleading representation, however litigation encompasses additional issues that require resolution. The course of conduct alleged strikes at the core of the Fair Debt Collection Practices Act which is the protection of individuals' privacy rights. The Third Circuit notably addressed this privacy animus in *Douglass v. Convergent Collections*, 765 F.3d 299, 306 (3d. Cir. 2014). *Douglass* expanded the definitional purview of 15 U.S.C. § 1692f(8) to encompass more avenues wherein the disclosure of information capable of identifying an individual as an alleged debtor fell within the purview of the FDCPA. *See Douglass v. Convergent Collections*, 765 F.3d 299 (3d. Cir. 2014). Further, the overlap and interplay of the FDCPA and Case Records Public Access Policy of the Unified Judicial System of Pennsylvania will need to be addressed in the course of litigation. Extensive and comprehensive motions practice is assured protracting the duration of further litigation.

Further, given the time, effort and expense that will be incurred, it is almost certain that the losing party will appeal following a dispositive motion given the size of the class and the salience of the issues therein. Each of these would further prolong the litigation and reduce the value to the class of any recovery. Put simply, this is a complex case in a niche area of law. This *Girsh* factor weighs heavily in favor of approving the settlement.

### (2) The reaction of the class to the settlement

An insignificant number of objections weights in favor of approving the settlement, especially when some of the class members have significant claims. *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d at 536. Here, not a single objection to the settlement was received and only a single individual elected to opt-out of the class and notice was provided to

11

approximately 1,125 individuals. On a legal basis, there really was no objection to the settlement by any class member. In *In re NFL*, roughly 1% of the class objected, and about 1% opted out. According to the Court of Appeals, "these figures weigh in favor of settlement approval." 821 F.3d at 438.

### (3) The stage of the proceedings and the amount of discovery completed

The third *Girsh* factor considers whether counsel had an adequate appreciation of the merits of the case before negotiating. *In re Warfarin*, 391 F.3d at 537. Stated otherwise, "[w]hat matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims." *In re NFL*, 821 F.3d at 439. Here, the parties were represented by skilled, experienced counsel. The class certification motion had been fully briefed which necessarily involved the merits. Discovery was not effectuated to any great degree given the readily ascertainable class list and the factual understanding class counsel and Defendant's counsel possessed of the matters upon entering the mediation. This is undergirded by the fact the merits of the case are truly a legal question more than a factual one and the FDCPA is a strict-liability statute. Questions of law predominate the case much more than any factual issues as the course of conduct arises from filed pleadings, readily accessible from the relevant dockets, and material disputes of fact are nearly non-existent.

### (4) and (5) The risks of establishing liability and damages

"'The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement.'" *In re NFL*, 821 F.3d at 440, *quoting In re Prudential*, 148 F.3d at 319. As described above, there are many complex issues that will have to be resolved if this action is litigated to a judgment. Here, an immediate settlement gives the class an appropriate recovery of the damages class could have recovered in a judgment at the time of the settlement

and eliminates the risk attendant to that recovery. Litigation presents uncertainty and significant risks for all parties, including the class, and resolution of the issues delineated above entrenches the losing party to further to appeal and further jeopardizes class-recovery. These factors overwhelmingly weigh in favor of approving the settlement.

### (6) The risks of maintaining the class action through the trial

In a settlement class, this factor is essentially irrelevant because there will be no trial. *In re: NFL*, 821 F.3d at 440. If the settlement is not approved, there are risks about whether the class can be maintained through trial which weighs in favor of approving the settlement.

### (7) The ability of the defendants to withstand a greater judgment

This factor generally has little significance and none in this instance. The defendant in any class action against a large corporation is likely to be able to withstand a more significant judgment, and that fact alone has no meaning. *Sullivan v. DB Investments, Inc*., 667 F.3d at 323 This factor becomes relevant when the defendant's professed inability to pay is used as an excuse to justify the amount of the settlement. *In re NFL*, 821 F.3d at 440. Here, Defendant has agreed to cure the course of conduct giving rise to the violation and offer a financial remedy commensurate with a technical violation of the FDCPA. *In re Warfarin*, 391 F.3d at 538. ("[T]he fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the … class members are entitled to under the theories of liability that existed at the time the settlement was reached.") Given that Defendant has both cured the course of conduct, incurring significant cost to effectuate said cure across the entire class, and offered financial restitution, this factor weighs in favor of approving the settlement.

**(8) & (9) The range of reasonableness of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery given all the attendant risks of litigation**

"These factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Warfarin*, 391 F.3d at 538. In cases seeking primarily monetary damages, the trial court is to compare the present value of the damages plaintiffs would likely recover if successful (discounted for the risk of not prevailing) with the amount of the proposed settlement. *In re General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 806 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995). Courts must take care when evaluating a settlement and not demand too high a recovery. *Id.* This Court in *Jackson v. Wells Fargo Bank, N.A.*, approved a settlement that was **19.5%** of the best possible recovery for the class. 136 F.Supp.3d 687, 706 (W.D.Pa. 2015).

At the time the parties reached the agreement to settle the instant action, Defendants filed motions to seal the cases associated with a disclosure of confidential exhibits identified within the class list. This equitable remedy achieved is substantial given the size of the class and the time necessary to complete the endeavor. Additionally, Defendant's financial payment to each class member represents an appropriate percentage for a technical violation of the FDCPA wherein the statutory maximum is a recognized $1,000.00. It bears mention that the class was an opt-out class wherein the payments will be disbursed and applied to the Class Members' accounts barring overt action on the Class Members' part.

Given the range of reasonableness for the complained of course of conduct, the technical nature of the violation, this resolution is an excellent recovery for the Class. Equitable relief on this scale is difficult to achieve and remedies the course of conduct begetting the violation of the FDCPA. Additionally, it serves to now protect the confidential information sealed therein from

any abuse or access by the public. Coupled with a financial incentive, this recovery is simply a great result for the class. Put simply, the settlement should be approved without question under the *Girsh* analysis.

## Conclusion

For the reasons set forth above, the settlement and the settlement class should be approved. Plaintiffs respectfully request that the Court enter the Order attached to the motion.

Respectfully Submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: April 19, 2021

By: */s/ Joshua P. Ward, Esq.*
Joshua P. Ward (Pa. I.D. No. 320347)
Kyle H. Steenland (Pa. I.D. No. 327786)

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206
Counsel for Plaintiffs